**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADAMS OUTDOOR ADVERTISING LIMITED PARTNERSHIP, | Civil Action No. |
| and | |
| LVL CO. LLC, | **COMPLAINT** |
| and | |
| ONE 6 LLC, | |
| and | |
| DENNIS E. BENNER, GARRETT R. BENNER, and BRANDON M. BENNER, both individually and their capacity as members of One 6 LLC, | |
| Plaintiffs, | |
| vs. | |
| CITY OF EASTON, | |
| and | |
| CITY OF EASTON ZONING HEARING BOARD, | |
| Defendants. | |

Plaintiffs, Adams Outdoor Advertising, L.P., LVL Co. LLC, One 6 LLC, Dennis E.

Benner, Garrett R. Benner, and Brandon M. Benner, by and through their attorney, James L.

Pfeiffer, Esq., of the law firm of Pfeiffer & Bruno, P.C., bring this action for violations of civil

rights under 42 U.S.C. Sections 1983 and 1988 seeking damages, declaratory, and equitable

relief against Defendants City of Easton and City of Easton Zoning Hearing Board for depriving Plaintiffs of their equal protection and free expression rights secured by the First and Fourteenth Amendments to the U.S. Constitution, as well as for denying the Benners and One 6 LLC substantive due process under the Fourteenth Amendment to the U.S. Constitution, with respect to their protected property and liberty interests, and in support thereof state as follows:

## PARTIES

1.     Plaintiff Adams Outdoor Advertising Limited Partnership (hereinafter "Adams") is a limited partnership organized under the laws of the State of Minnesota with corporate offices at located at 3801 Capital City Blvd., Lansing, Michigan.

3.     The limited partners and general partner of Adams are all citizens of the State of Minnesota.  None of the parent companies/entities of the same or their respective members, shareholders, or individuals are residents of the Commonwealth of Pennsylvania.

4.     Plaintiff LVL Co., LLC (hereinafter "LVL") is a limited liability company organized under the laws of the State of Delaware with corporate offices at located at 1209 Orange Street, Wilmington, DE 19801.

5.     LVL has three members, all of which are limited partnerships.  None of the members of LVL are residents of the Commonwealth of Pennsylvania, as none of the limited partnerships is organized in the Commonwealth of Pennsylvania, and none of the individual partners of each respective limited partnership is a resident or citizen of the Commonwealth of Pennsylvania.

6.     Adams is an affiliate of LVL.

7.     Plaintiff One 6 LLC is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with corporate offices located at 2005 City Line Rd., Suite

106, Bethlehem, PA 18017, and whose owner is a resident and citizen of the Commonwealth of Pennsylvania.

8.      Plaintiff Dennis E. Benner is an adult citizen of the United States, residing within the Eastern District of Pennsylvania, and a member of One 6 LLC with corporate offices located at 2005 City Line Rd., Suite 106, Bethlehem, PA 18017. He sues in both his individual capacity and in his capacity as a member of One 6 LLC.

9.      Plaintiff Garrett R. Benner is an adult citizen of the United States, residing within the Eastern District of Pennsylvania, and a member of One 6 LLC with corporate offices located at 2005 City Line Rd., Suite 106, Bethlehem, PA 18017. He sues in both his individual capacity and in his capacity as a member of One 6 LLC.

10.     Plaintiff Brandon M. Benner is an adult citizen of the United States, residing within the Eastern District of Pennsylvania, and a member of One 6 LLC with corporate offices located at 2005 City Line Rd., Suite 106, Bethlehem, PA 18017. He sues in both his individual capacity and in his capacity as a member of One 6 LLC.

11.     Defendant City of Easton (hereinafter "Easton") is a municipality formed under the laws of the Commonwealth of Pennsylvania with an office address of One South Third Street, Easton, Pennsylvania 18042.

12.     Defendant City of Easton Zoning Hearing Board (hereafter "the Board") is a municipal board for the City of Easton, a municipality formed under the laws of the Commonwealth of Pennsylvania, with an office address of One South Third Street, Easton, Pennsylvania 18042.

## JURISDICTION & VENUE

13.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§1331 (Federal Question) and §1343 (Civil Rights) as these claims (First Amendment, and Equal Protection and Due Process under the Fourteenth Amendment) arise under (a) the Constitution of the United States and (b) 42 U.S.C. §§1983 and 1988.

14.     This Court has jurisdiction over the parties and venue is proper in this Court pursuant to 28 U.S.C. §1391 in that:

        a.     Defendants have their offices or principal places of business in this District; and

        b.     The transactions and occurrences giving rise to the cause of action in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

15.     Plaintiff One 6 LLC owns the property located at 16 Centre Square in Easton, Pennsylvania, in the southeast corner of the Downtown Centre Square and Third Street, with a Parcel ID Number L9SE2B 5 11 (Pine Street) (alternatively referred to as "the subject property" at times herein).

16.     At all times relevant to this Complaint, the multi-level building at the subject property was comprised of a vacant first floor building space previously occupied by a business tenant, Wells Fargo, along with residential apartments for rent, some occupied and some vacant, on the upper floors of the building known as "One 6 Flats."

17.     The Wells Fargo bank that had occupied the building for several decades recently left, vacating a 6,400 square foot space on the first floor of the building.

4

18.     Plaintiffs Dennis E. Benner, Garrett R. Benner, and Brandon M. Benner (hereinafter collectively "the Benners") are the members of One 6 LLC which owns the subject property.

19.     Since 2018, the Benners have been attempting to lease the space left by the vacating bank, unsuccessfully.

20.     The Benners only had three inquiries concerning the vacant space from June 2018 through January 2019.

21.     The Benners' difficulty in filling the space is tied directly to their inability to compete with other commercial properties on Centre Square to whom Defendant City of Easton Zoning Hearing Board has systematically granted variances for or approved larger signs and sign coverage, and/or declined to enforce the sign size limitations of its Zoning Ordinance, while treating the Benners and One 6 LLC differently.

22.     Defendant City of Easton Zoning Hearing Board is a municipality/municipal body and/or board of Defendant City of Easton charged with interpreting and applying (but not legislating/enacting) Defendant City of Easton's Zoning Ordinance.

23.     At the center of the City of Easton is located a busy commercial hub known as "Center Square", in the Downtown District in which the Benners' property at 16 Centre Square is located.

24.     Centre Square is, by Defendant's admission, the "busy hub of the City" with a "high volume of vehicular traffic" and an "intensity of uses."

25.     Centre Square is characterized by a very varied, mixed use, active commercial area with some residential and with very diverse types of signage and styles.

26.     Within Centre Square, the City has allowed to proliferate neon signs advertising

pawn shops, tattoo parlors, "Pleasure and Pain", "Cash Gold" and "We Buy Silver"; very large Crayola murals and free-form crayons and markers; Red Bull outdoor cocktail tables; a 100 square foot backlit sign intended to resemble a giant microphone; painted signs; up-lighting including colored up-lighting; flag banners; projecting signs; wall signs; event signs; awning signs; window signs; and structural signs.

27.     An existing billboard on 42 S. Third Street, *in the Downtown District*, advertising off-premises products or services is also clearly visible from Centre Square.

28.     In addition to the existing pawn shops, tattoo parlors, "Pleasure and Pain" advertised in bright neon, and a visible off-premises billboard in the Downtown District, the newest tenant on Centre Square is a BYOB axe-throwing establishment which mixes alcohol with weaponry, joining the mix of diverse "intensity of uses" in this busy urban hub.

29.     The current sign size limitation for signs in Centre Square under the City of Easton Zoning Ordinance, purportedly (because it is selectively enforced as here averred), is 20 square feet.

30.     The City has approved and/or granted variances to many of the businesses and properties in Centre Square to erect signs far in excess of Defendants' 20 square foot sign size limitation, and/or through selective non-enforcement has permitted such signs to proliferate.

31.     Defendants have permitted the property located at 30 Centre Square (Crayola Experience) to feature enormous wall, window, and structural signs far in excess of its 20 square foot sign size limitation.

32.     Defendants have granted a variance for the property located at 1 -- 6 Centre Square (One Centre Square Event Center) to feature a 100 square foot backlit microphone sign along with additional *digital* reader boards for a *total of 143 square feet of signage.*

33.   In the Zoning Hearing Board's decision to grant 16 Centre Square its variance to allow larger than 20 square feet of signs, Defendants have admitted in factual findings and conclusions of law that its current sign size limitation unduly restricts the visibility of messages in light of the traffic and busyness of Centre Square, finding that greater sign size is needed to ensure visibility of the messages and expressions contained on the signs, citing the "need to have the displayed messages of sufficient size to ensure visibility to the high volume of vehicular traffic in this busy hub of the City."

34.   Defendants have thus allowed other property owners on Centre Square to place larger signs on their business than allowed under its Zoning Ordinance because Defendants have determined that the messages need to be displayed larger to ensure those messages are visible to everyone.

35.   The Benners/One 6 LLC, as property owners on Centre Square, want their messages concerning but not limited to their business and tenants to be visible to everyone too, and to be treated equally with other property owners and businesses on Centre Square under the law.

36.   Dennis E. Benner, a licensed attorney practicing in land-use for more than 35 years with extensive real estate experience, determined that in order to fill the vacancy on his first floor and the vacant apartments above, he needs additional signage to make the property attractive to potential tenants and to compete with such enormous sign coverage on his neighbors' properties in what Defendants have admitted is "an intensity of uses" in the "busy hub of the City" with "a high volume of vehicular traffic".

37.   Dennis E. Benner believes and opined based on his extensive experience that his potential tenants want visibility, and being able to offer adequate signage space to a tenant is

7

important because it gives them the opportunity to be relevant in relation to the other properties on Centre Square to whom Defendants have systematically allowed substantial deviance from its Zoning Ordinance on signs.

38.     The Benners/One 6 LLC intend to advertise the apartment vacancies in their building and to secure tenants using a larger sign, as well to attract first floor tenants knowing they can use the sign to advertise their businesses and products for sale as well as advertising off premises businesses and products by and through their business relationship with Adams/LVL.

39.     The Benners and One 6 LLC will offer the use of the proposed sign to the tenants for the first floor of their building as an incentive for the potential tenants to rent this commercial space, in addition to other non-premises occupying advertisers on the sign by and through their business relationship with Adams/LVL.

40.     Plaintiffs Adams and LVL are in the business of leasing and purchasing off-premise signs (billboards) for advertising other businesses and products as well as charity and community based advertising.

41.     The Benners contacted Plaintiffs Adams/LVL regarding the construction, installation, maintenance, and sale of advertising space on the proposed projecting sign, similar in size and character to those presently on Centre Square, to be installed on their building.

42.     Plaintiffs together formulated plans for a projecting sign (as defined under the City of Easton Zoning Ordinance and permitted of right in the Downtown District) to be installed on the Benners'/One 6 LLC's building with dimensions of 10 feet by 15 feet, for a total of 150 square feet.

43.     Plaintiffs' proposed sign will communicate the speech/expression of all

8

Plaintiffs hereto. As proposed and sought by Plaintiffs, it would advertise uses and aspects of the property, including by the building owner (Plaintiffs Benner and One 6 LLC) and the first-floor occupying tenant(s), and it will also contain public information, services messages including by non-profit and charitable organizations that are explicitly exempt from the zoning regulations under Defendants' Zoning Ordinance §595-193 ("Sign Exempt From Zoning Regulations"), as well as off-site advertisers contracted through Plaintiffs Adams/LVL.

44.     Plaintiffs' proposed sign would also carry messages of community and City events, religious and faith-based messages, political messages, and emergency messages such as Amber Alerts.

45.     Plaintiffs' proposed sign will carry commercial advertising sold by Plaintiffs Adams Outdoor Advertising Limited Partnership and LVL Co., LLC for third-party advertisers.

46.     Said speech/expression on Plaintiffs' proposed sign is not inconsistent or incompatible with the character of the messages and signs Defendants have approved, granted variances for, and/or allowed to proliferate in the Downtown District such as the neon signs advertising pawn shops, tattoo parlors, "Pleasure and Pain", "Cash Gold" and "We Buy Silver"; the large murals and free-form crayons and markers; Red Bull outdoor cocktail tables; 100 square foot backlit microphone sign and digital reader boards; an existing billboard on 42 S. Third Street, in the Downtown District, advertising off-premises products or services; and the BYOB axe-throwing in the rear of the dollar store, along with countless tobacco shops that display glass smoking vases and pipes, for example, in their shop windows for sale to passersby.

47.     Plaintiffs Benner and One 6 LLC, like all properties and business owners similarly situated on Centre Square, are subject to the City of Easton Zoning Ordinance, and

are entitled to its equal application under the law.

48.     On September 11, 2018, the Benners and One 6 LLC, in conjunction with Adams and LVL, Co., LLC, submitted a permit application to the City of Easton to erect the proposed projecting sign of 150 sq. ft. to be attached to the building at the subject property.

49.     On September 14, 2018, said permit was denied.  See attached Exhibit "A" (denial of application for permit to erect projecting sign).

50.     Despite the application's clarity that a projecting sign was being sought, the City of Easton Zoning Administrator unilaterally converted the application to one for a sign type Appellants did not apply for – an "off-premises" sign – and denied the application citing restrictions applicable specifically to "off-premises", "animated", and "digital" signs, *none of which the proposed sign constitutes by express definition of the Zoning Ordinance.*

51.     Plaintiff's proposed sign is, by definition, a "Projecting Sign" under Defendants' Zoning Ordinance.

52.     The sign, as proposed, is a 10 feet high by 15 feet wide curved sign to be affixed to the building and, once installed, will project greater than twelve inches from the building.

53.     Defendants' Zoning Ordinance defines a "Projecting Sign" as "a sign which is affixed to any building, wall or structure and extends more than 12 inches from the façade or place of the structure",   §595-195(C) and §595-10(D)("Projecting Sign" defined), and therefore, *by definition of the Zoning Ordinance*, Plaintiffs' proposed sign is a "Projecting Sign." See attached Exhibit "B" (City of Easton Definitions and Sign Regulations).

54.     Plaintiffs' proposed projecting sign is permitted by right in the Downtown District. (§595-205 ("Permitted Signs by District"; "Table of Permitted Signs by District.")

55.     As a projecting sign, Plaintiffs' proposed sign meets every requirement and

restriction applicable to projecting signs under the ordinance other than size, specifically:

    a.    The premises has a minimum of 20 lineal feet of frontage onto the public right-of-way as required by §595-195(C)(1). The Third Street façade is 120.1 lineal feet and the Centre Square façade is 64.57 lineal feet;

    b.    The proposed projecting sign will not be located within two feet from a side property line as required by §595-195(C)(1)(a);

    c.    The proposed projecting sign will have at least eight feet of vertical clearance for passersby on the below walkway as required by §595-195(C)(1)(b). It will have 16.2 feet of vertical clearance to be exact;

    d.    The proposed projecting sign will not extend above the eaves or parapet of the building as required by §595-195(C)(1)(b); and

    e.    The proposed projecting sign does not extend into the right-of way more than 50% of the width of the sidewalk as required by §595-195(C)(1)(b). It only extends 32% of the width.

56.    Plaintiffs' proposed projecting sign is ordinance-compliant in all respects with the sole exception that it does not meet the sign size limitation in the Downtown District of 20 square feet imposed by Section 595-205(A) of the Zoning Ordinance, which sets forth the permitted signs by district and refers to "the Table of Permitted Signs by District" "located at the end of this chapter", wherein a 20 square foot size limitation is imposed upon signs in the Downtown District.

57.    Plaintiffs appealed the denial of their permit application to Defendant City of Easton Zoning Hearing Board on October 9, 2018.

58.    On appeal to Defendants, Plaintiffs challenged the zoning administrator's erroneous interpretation of the sign ordinances applicable (or inapplicable) to their request, challenged the constitutional validity of the City's sign ordinances both facially and as applied to Appellant, and requested any and all variances necessary to allow their proposed sign, including but not limited to one for the size of its proposed projecting sign.

59.     The matter was heard by Defendant City of Easton Zoning Hearing Board over four successive months, on January 22, 2019, February 19, 2019, March 18, 2019, and April 17, 2019.

60.     Following the presentation of testimony and evidence, the record was closed on April 17, 2019 with written summations submitted thereafter.   See attached Exhibit "C", Memorandum of Law submitted to Defendant City of Easton Zoning Hearing Board.

61.     In a decision dated August 23, 2019 and mailed to Plaintiffs on August 27, 2019, Defendants applied (or misapplied as here averred) the City of Easton Zoning Ordinance to Plaintiffs and their request, and denied Plaintiffs' appeal and requested variances, thereby precluding Plaintiffs from erecting their proposed sign. See Exhibit "D", Decision.

62.     The August 23, 2019 decision by Defendant City of Easton Zoning Hearing Board interpreting Defendant City of Easton's Zoning Ordinance and applying it to Plaintiffs represents a final decision by Defendants on the merits, and renders Plaintiffs' as-applied claims now ripe for review, in addition to their facial challenges to the Zoning Ordinance.

62.     Defendants denied Plaintiffs' proposed sign, in part, by erroneously classifying it as an "off-premises sign" which does not meet the Zoning Ordinance's requirements for off-premises sign found under §595-195(I).

64.     §595-10(D) defines an Off-Premises Sign as "*a freestanding, elevated sign* advertising an establishment, merchandise, service or entertainment which is not sold, produced, manufactured, or furnished at the site on which the sign is located (i.e., billboards or outdoor advertising)."

65.     "Freestanding Sign" is defined in the Zoning Ordinance as "a sign permanently supported by an upright pole(s), box and/or structure which is permanently anchored into the

ground." §595-10(D)("Freestanding sign" defined).

66.     Additionally, page two (2) of the City's sign permit application form, entitled "Types of Signs: Freestanding" defines a freestanding sign as "a sign permanently supported by an upright pole(s) that is permanently anchored into the ground."

67.     The projecting sign, as proposed by Plaintiffs, would be attached to the second-story corner walls of a multi-level building at 16 Centre Square, and is not a billboard affixed to a pole, box or structure elevated above and along a highway as the definition clearly evokes by the common understanding of its words, i.e., *it is not "freestanding" by definition of the Zoning Ordinance.*

68.     As Plaintiffs' proposed projecting sign is not freestanding *as required by definition to be an "off-premises" sign under Defendants' Zoning Ordinance*, §595-10(D)("Off-premises sign" defined), *it is, by definition, not an off-premises sign and not subject to the provisions for "off-premises" signs under §595-195(I).*

69.     Nevertheless, Defendants arbitrarily, irrationally, discriminatorily, illegally and in bad faith subjected Plaintiffs' proposed sign to the requirements of §595-195(I) to deny Plaintiffs' their proposed sign based on including but not limited to the content of the messages to be communicated on the sign.

70.     Defendant City of Easton Zoning Hearing Board interpreted the clause "and/or structure which is permanently anchored into the ground" in the definition of "freestanding" to include *buildings* permanently anchored into the ground by their cement or concrete foundations, such as the one to which the proposed sign would here be affixed.

71.     Defendant's misinterpretation of the "freestanding" requirement for its off-premises sign regulations is critically flawed for many important reasons, and was applied

solely to deny Plaintiffs' application in a discriminatory, arbitrary, capricious, irrational, bad faith and illegal manner where other projecting signs (which by definition of the ordinance Plaintiffs' proposed sign is) have not been.

72.     Defendant's interpretation of "freestanding" as including all buildings contravenes the commonly applied definition of "Freestanding", see Merriam Webster's Dictionary definition of "freestanding" as an adjective meaning "standing alone or on its own foundation free of support or attachment."

73.     Under Defendant's interpretation broadening the definition to include all buildings with foundations in the ground, *every sign in Centre Square would be a "freestanding sign."* Every sign, on every building in the City of Easton, under an interpretation so absurdly broad (and never before applied to any other property owner), would be "a sign permanently supported by an upright pole(s), box and/or structure which is permanently anchored into the ground", rendering nearly every "wall sign" and "projecting sign" – indeed every other sign category in Centre Square – non-compliant with the more strict ordinance requirements for freestanding signs.

74.     As "Freestanding Signs" are not permitted in the Downtown District under §595-205, *every sign in Centre Square would be in violation under Defendant's newly-conceived interpretation.*

75.     The adoption of such an interpretation would instantly render illegal and in violation of the Zoning Ordinance dozens of signs in Centre Square, and possibly hundreds throughout the City of Easton, while raising the question as to why such an interpretation was never applied to the applications of those properties/businesses and requiring them to obtain variances for their supposed "freestanding" signs which none have been required to do.

14

76.     Defendant's interpretation of "freestanding" as applied to Plaintiffs also runs afoul of another provision of the Zoning Ordinance, §595-195(I)(1)(h) of the Zoning Ordinance governing off-premises signs, which reads: "Structural support.  Off-premises signs shall be *freestanding and not connected to other structures."*

77.     This requirement for off-premises signs – that they not be connected to other structures – conclusively demonstrates that a sign affixed to a building such as Plaintiffs' proposed projecting sign is not an "off-premises sign", which again is defined as "a freestanding, elevated sign."

78.     The City's Zoning Ordinance logically cannot both define an off-premises sign as freestanding under §595-10(D), if freestanding includes being affixed to a building, and at the same time prohibit off-premises signs from being "attached to a building" under §595-195(I)(1)(h); the two definitions/requirements would inherently be in conflict and logically inconsistent.  Defendant's interpretation as applied to Plaintiffs is therefore exposed for the logical fallacy and pre-text it was in denying Plaintiffs' proposed projecting sign directly related to the content of the advertisements on Plaintiffs sign.

79.     Defendant's interpretation of the definition of "freestanding sign" as applied to Plaintiffs *has never been applied to a sign attached to the wall of a building in Centre Square,* such that Plaintiffs have been subjected to unequal treatment as compared to the other property/business throughout the City of Easton and specifically other owners on Centre Square through Defendant's discriminatory, arbitrary, irrational, bad faith and illegal interpretation of the Zoning Ordinance.

80.     Plaintiffs' planning expert, Mr. Charlies Schmehl, has been recognized as an expert in community planning and zoning at about 45 different zoning hearing boards, boards

15

of supervisors, borough councils, city councils, and courts, and wrote the bulk of the zoning ordinances of Scranton, the City of Lancaster, City of Bethlehem, City of Allentown, Emmaus, and parts of Harrisburg and Williamsport.

81.    Mr. Schmehl's expert testimony in these regards has been assisting in the interpretation of ordinances and discussing how an ordinance applies to particular situations, and he has been allowed to testify as an expert in such many, many times.

82.    Mr. Schmehl was here offered – and accepted – as an expert in the field of planning and zoning ordinance interpretation and, analyzing the same sections and circumstances described in the previous averments, concluded and opined that the sign is not, by definition, a "freestanding" sign, and accordingly, by definition, is not an "off-premises sign" under the City's Zoning Ordinance subject to the "off-premises" sign restrictions.

83.    Since the sign is by definition not "an off-premises sign or portion thereof" under Defendants' Zoning Ordinance, it cannot be a "digital sign", by definition of that same ordinance, §595-10(D)("Digital Sign" defined), as a digital sign is defined as an off-premises sign.

84.    Nevertheless, Defendant City of Easton Zoning Hearing Board also denied Plaintiffs' proposed sign by erroneously classifying it as a "digital sign" that does not meet the Zoning Ordinance's requirements for digital signs found under §595-195(I)(1)(t).

85.    Defendants' Zoning Ordinance defines "Digital Sign" as *an off-premises sign or portion thereof* that displays electronic, static images, static graphics or static pictures, with or without text information, comprised of a small number matrix elements using different combinations of light emitting diodes (LEDs), fiber optics, light bulbs or other illumination devices within the display area where the message change sequence is accomplished

immediately or by means of fade." §595-10(D)("Digital Sign" defined)(emphasis added).

86.     The zoning ordinance provisions for digital signs are *found entirely under the off-premises sign provisions of §595-195(I)*.  That section is titled "Off-premises signs".

87.     Within the section for "Off-premises signs", §595-195(I), is a subsection dealing with digital signs, §595-195(I)(1)(t). That subsection, under the larger "Off-premises signs" section of §595-195(I), is titled "Digital signs".

88.     *There is no other subsection under any other sign type addressing "digital signs"*.  In other words, in addition to defining "digital signs" as "an off-premises sign or portion thereof", the Zoning Ordinance organizes the provisions governing digital signs as part of those dealing with "off-premises signs", and only as part of those.

89.     Defendant City of Easton's Zoning Ordinance has not legislated, and therefore cannot be enforced with respect to, digital sign restrictions and requirements for signs which, while perhaps digital in nature, are not "digital signs" under the City's actual legislation, i.e., the Zoning Ordinance.   These include "projecting signs", such as the one proposed by Plaintiffs.

90.     Since Plaintiffs' proposed sign is not "an off-premises sign or portion thereof", as set forth in the previous averments, it cannot be a "digital sign", by definition of the ordinance  §595-10(D)("Digital Sign" defined), and therefore cannot be subject to the Zoning Ordinance's regulations of those defined "digital signs".

91.     Nevertheless, Defendants arbitrarily, irrationally, discriminatorily, illegally and in bad faith subjected Plaintiffs' proposed projecting sign to the requirements of §595-195(I)(1)(t) to deny Plaintiffs' their proposed sign, even though:

   (a)     Those requirements/restrictions do not apply; and

17

(b)     With the sole exception of not meeting the cross-reference to compliance with "all regulations regarding off-premises signs," §595-195(I)(1)(t)[1], the proposed sign actually meets all of the requirements for digital signs under §595-195(I)(1)(t) anyway.

92.     Defendant City of Easton Zoning Hearing Board's conduct amounts to legislating, that is, modifying or amending the terms of Defendant City of Easton's Zoning Ordinance rather than enforcing the definitions and requirements as written, when its function and power is solely to apply the terms of the Zoning Ordinance as written rather than deviating from those terms based on an unexpressed policy or its arbitrary, irrational, discriminatory, bad faith or illegal purpose aimed at singling out Plaintiffs for different treatment under the law.

93.     Plaintiffs applied for a permit to erect a projecting sign, and cannot be denied based on restrictions applicable to sign types that, by definition of the City's own ordinance, do not apply.

94.     Defendants also arbitrarily and irrationally denied Plaintiffs' proposed sign by claiming it was non-compliant with §595-194(E) of the Zoning Ordinance.

95.     §595-194(E) of the Zoning Ordinance states:

"Red or green lights. Except for traffic control signs, red or green lights are prohibited within 75 feet of a public right-of-way or 200 feet of a traffic control signal, whichever is greater. *This provision excludes approved digital signs comprised of a red-green-blue (RGB) display matrix.*"

96.     Plaintiffs' proposed sign as testified to by its manufacturer is comprised of a red-green-blue (RGB) display matrix and has its approvals.

97.     The approvals necessary for the development, building, and use of an RGB display billboard are through UL certification and FCC verification of conformity, specifically, conformance to the American National Standards Institute (ANSI) approved UL-48 standard for signs, and FCC Part 15 Title 47.

18

98.    Plaintiffs' proposed sign received UL approval, as well as its FCC approval (obtained through testing by a third-party called EMTEK) Verification of Conformity confirming that the proposed projecting sign meets the FCC guidelines.

99.    As Plaintiffs' proposed sign is comprised of an RGB matrix sign and has received both necessary approvals, ***Plaintiffs' proposed sign falls within the express exclusion stated within §595-194(E) for approved red-green-blue (RGB) digital matrix signs.***

100.   No evidence was presented to show Plaintiffs' sign does not meet the express exclusion set forth in §595-194(E) and therefore Defendants arbitrarily, irrationally, discriminatorily, illegally and in bad faith denied Plaintiffs' proposed sign citing §595-194(E), while – without explanation – ignoring and failing to apply the exception for approved RGB digital matrix signs in defiance of the UL and FCC approvals submitted to Defendants by the sign's manufacturer and Plaintiffs.

101.   Defendants refused to grant Plaintiffs a variance for size despite the fact that Plaintiffs' proposed departure from the 20 square foot restriction amounts to a request for a much smaller percentage of sign area than has already been found necessary by Defendants for other property owners and businesses on Centre Square "to ensure visibility in the busy hub" of the City in this area of "intense uses".

102.   The Benners'/One 6 LLC's building at 16 Centre Square has building facades facing Center Square totaling 37,952 square feet.

103.   The total proposed sign coverage of the Benners'/One 6 LLC's building with the proposed projecting sign, expressed in a percentage, would be ***just 0.88% of the total building façade.***

104.   In addition to granting variances for and/or otherwise permitting through non-

enforcement signs as large or substantially larger than Plaintiffs' proposed 150 square foot sign to exist in Centre Square, Defendants have permitted property owners within Centre Square to maintain substantially larger percentage of sign coverage than requested by Plaintiffs.

105.   Defendants have allowed other similarly situated property owners and businesses much greater percentage of façade coverage by signs as summarized herein:

**One Centre Square Event Center, located at 1 – 6 Centre Square**

The Centre Square façade is 2,799 square feet.  The total sign coverage of that façade for all approved signs is 6.54% of the building façade.

The Northampton Street façade is 2,741 square feet.  The total sign coverage of that façade for all approved signs if 7.30% of the building façade.

*Total both facades: 6.91% sign coverage.*

**Easton Exchange Pawn Shop, located at 5 North Third Street (on Centre Square)**

The Centre Square façade is 3,358 square feet.  The total sign coverage of the façade is 2.11%.

The Third Street façade is 2,383 square feet.  The total sign coverage of the façade is 2.10%.

*Total both facades: 2.11% sign coverage.*

**Two Rivers Trading Post, located at 50 Centre Square**

The Centre Square (the only) façade is 380 square feet.  *The total sign coverage of the façade is 16.05%.*

**Crayola Experience (located at 30 Centre Square)**

The Centre Square façade is 8,203 square feet.  The total sign coverage of that façade for all approved signs is 17.02% of the building façade.

The Northampton Street façade is 3,509 square feet.  The total sign coverage of that façade for all signs is 18.81% of the building façade.

The Pine Street façade is 4,970 square feet.  The total sign coverage of that façade is 82%.

*Total all facades is 36.55% sign coverage.*

106. The subject property at which Plaintiffs' sign is being proposed would accordingly have the lowest percentage of sign coverage on its facades of any of these buildings on Centre Square that Defendants have allowed, granted variances for, or otherwise permitted.

107. Crayola's current sign coverage is 4,053% greater than what is being proposed for 16 Centre Square by Plaintiffs.

108. Two Rivers Trading Post's current sign coverage made up of bright red and green neon pawn shop signs is 1,724% greater than what is being proposed for 16 Centre Square by Plaintiffs.

109. One Centre Square Event Center's sign coverage, the most recent of this group approved by the Board by variance, is 685% greater than what is being proposed for 16 Centre Square by Plaintiffs.

110. Easton Exchange's sign coverage is 140% greater than what is proposed for 16 Centre Square by Plaintiffs.

111. Stated another way, the square footage of the Centre Square façade of Plaintiffs' 16 Centre Square building is five times the size of the Centre Square façade of the One Centre Square building where the Board recently found that the 20-square foot sign area was too small to ensure visibility of the messages.

112. The South Third Street façade of 16 Centre Square is nine times bigger than the Northampton Street façade of One Centre Square, where the Board in that case found the 20-square foot sign restriction too severe to ensure visibility of the messages.

113. The sign variance approved for One Centre Square involved 143 square feet of digital and backlit signs compared to Plaintiffs' application for a 150 square foot sign on a

21

building that is between five and nine times the size.

114.    Plaintiffs' proposed departure from the 20 square foot restriction therefore amounts to a request for:

a.    A smaller sign in terms of square footage than multiple other signs Defendants have allowed in Centre Square;

b.    A smaller deviation from the sign size restriction than Defendants have allowed in Centre Square;

c.    A much smaller percentage of sign area than has already been found as a finding of fact and conclusion of law by Defendants as necessary to ensure visibility of messages in Centre Square;

d.    A much smaller percentage of sign area than has been granted to One Centre Square and allowed for many other buildings on Centre Square.

115.    Despite Plaintiffs being property and business owners on Centre Square like the aforementioned properties/businesses, Plaintiffs were denied equal application and interpretation of the Zoning Ordinance by Defendants with respect to their request for a larger sign size based on the content of their speech and messages.

116.    Defendants, while approving, granting variances for, and allowing larger signs and sign coverage for speech and messages Defendants prefer, refused and denied Plaintiffs equal application and interpretation of the Zoning Ordinance to restrict the size and visibility of Plaintiffs' proposed sign based on their proposed content which Defendants do not prefer, thereby picking and choosing from among content which speech receives greater visibility and readability in Centre Square..

116.    As a result of Defendants' conduct, Plaintiffs have been denied their

constitutional free speech and expression rights under the First Amendment to the United States Constitution, and have been denied and continue to be denied equal protection under the law under the Fourteenth Amendment to the United States Constitution, causing them not only financial loss and lost opportunities but the deprivation of their fundamental rights to free expression and equal protection.

117.    As a further result of Defendants' conduct, the protected property and liberty interests of the Benners/One 6 LLC have been infringed upon and denied in violation of substantive due process under the Fourteenth Amendment to the United States Constitution, causing them financial loss, lost opportunity and the denial of their fundamental rights.

## COUNT I

## 42 U.S.C. §1983

## DENIAL OF EQUAL PROTECTION IN VIOLATION OF
## THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
### (All Plaintiffs vs. All Defendants)

118.    Paragraphs 1 through 117 are incorporated herein as if fully set forth in this paragraph.

119.    Defendants, under color of law in its capacity as a city government/board and using their authority and powers as such, intentionally treated Plaintiffs differently from others similarly situated, i.e., other property owners and businesses on Centre Square in the Downtown District of Easton, Pennsylvania, all of which are subject to the City's sign regulations in Defendants' Zoning Ordinance, including but not limited to those specifically identified in the above factual averments.

120.    Defendants have affirmatively approved, granted variances to, and permitted,

and/or otherwise allowed through non-enforcement the proliferation of signs by similarly-situated properties in Centre Square that exceed the sign size limitations of Defendants' Zoning Ordinance, while denying and refusing same to Plaintiffs, despite the fact that all properties and businesses in Centre Square – and all sign types – are supposed to be subject to the same sign size restrictions.

121.    Defendants have allowed, granted variances to and approved similarly-situated properties and buildings in Centre Square having signs and sign coverage of their buildings far in excess of that which Defendants permit to Plaintiffs, strictly holding Plaintiffs to the sign size restriction while systematically allowing other properties to exceed or violate it.

122.    Defendants' denial of equal application (or non-application) of its sign size restrictions in its Zoning Ordinance is unconstitutional, and was pre-textually used as a reason to preclude Plaintiffs' speech, which Defendants deems undesirable or unattractive, while treating others with whose speech Defendants agree or prefer more favorably.

123.    Additionally, Defendants declined and refused to apply its own ordinance definitions for "projecting signs" to properly classify Plaintiffs' proposed sign under the ordinance definitions in a manner equal to and consistent with Defendants' application of the ordinance definitions to other signs in Center Square, and treated Plaintiffs' request differently by intentionally mischaracterizing Plaintiffs' proposed sign as an "off-premises sign" and "digital sign" which, by definition of the zoning ordinance, it is not.

124.    Defendants have denied and refused to treat Plaintiffs equally with similarly-situated properties in Centre Square when it comes to the sign regulations of its Zoning Ordinance, including but not limited to dimensional requirements such as size as well as sign definitions.

125.    There is no rational basis for the difference in Defendants' treatment of Plaintiffs compared to similarly-situated properties, and no rational relationship for differential treatment to any legitimate government interest.

126.    Defendants' conduct in treating Plaintiffs differently from similarly-situated comparators is irrational, arbitrary, illegal and motivated by bad faith and impermissible reasons specifically for the purpose of restricting Plaintiffs' freedom of speech and expression on said sign.

127.    Defendants' selective enforcement of its Zoning Ordinance to deny to Plaintiffs equal application – or equal enforcement or non-enforcement – of its sign ordinance as it provides to other property owners and businesses on Centre Square is arbitrary, discriminatory, and without rational relationship to a legitimate government interest, and intended to inhibit Plaintiffs' exercise of its constitutional rights, namely, their free speech and petition rights under the First Amendment, and with respect to Adams/LVL and the Benners/One 6 LLC, their protected substantive due process property and liberty interests.

128.    Said conduct violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

129.    Plaintiffs have suffered harm and injury as a result of Defendants' violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution in the form of denial of their application, appeal and variance requests to erect their proposed projecting sign, which has and continues to cause financial harm and lost opportunity, and by the commensurate denial and impediment to their free exercise of speech rights and property and liberty interests.

WHEREFORE, Plaintiffs requests that this Honorable Court enter judgment in their

favor and against Defendants for the denial of equal protection in an amount to be determined, together with interest, costs, and fees (including attorney fees), any and all further or additional damages (including but not limited to exemplary, consequential, and/or punitive) that may be available as provided under applicable law, equitable and declaratory relief requiring Defendants to permit Plaintiffs to erect their sign as proposed and without further impediment, and such further relief as this Honorable Court deems equitable and just.

**COUNT II**

**42 U.S.C. §1983**

**DENIAL OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**
**(Plaintiffs the Benners and One 6 LLC vs. All Defendants)**

130.    Paragraphs 1 through 129 are incorporated herein as if fully set forth in this paragraph.

131.    The Benners and One 6 LLC hold a *property interest* as owners of the subject real property located at 16 Centre Square in Easton, Pennsylvania whereupon they seek to erect a projecting sign.

132.    Ownership in real property is a property interest protected by substantive due process under the Fourteenth Amendment to the United States Constitution, as is a lease governing the use of real property, such that the Benners and One 6 LLC have a protected property interest in 16 Centre Square, Easton, Pennsylvania.

133.    The use and enjoyment of a subject property are rights that are inherent to ownership, and by implication, to a leasehold, and accordingly, not only is Plaintiffs' ownership and/or leasehold itself a protected property interest, but Plaintiffs' *planned use* of the

subject property also qualifies as a protected property interest under Fourteenth Amendment substantive due process.

134.    The Benners and One 6 LLC also have a recognized, protected *liberty interest* under the Fourteenth Amendment to the United States Constitution to utilize the subject property and to operate their business free from unreasonable governmental interference.

135.    Defendants, under color of law in their capacity as a city government/board and using their authority and powers as such, intentionally deprived (and continue to deprive) the Benners and One 6 LLC of their protected due process property and liberty interests by arbitrarily and irrationally interfering with and denying their ability to erect a projecting sign to display their chosen message/advertisements on their property, despite the fact that projecting signs are permitted in the Downtown District.

136.    Defendants' action in interfering with and denying the Benners and One 6 LLC's ability to erect a projecting sign displaying their chosen message/advertisements on their property was and continues to be taken without rational basis and without rational relation to a legitimate state interest.

137.    Defendants have not, and cannot, demonstrate any legitimate state interest for denying to Plaintiffs what Defendants have affirmatively approved, granted variances to, and permitted, and/or otherwise allowed through non-enforcement, to other property owners and businesses throughout Centre Square, including but not limited to signs exceeding the ordinance sign size limitation and placement of a projecting sign.

138.    Based upon the Defendants affirmatively approving, granting variances to, and permitting, or allowing through non-enforcement the proliferation of signs by other properties and owners in Centre Square exceeding the ordinance's sign size limitation, Defendants have

27

not demonstrated that their denial of same to Plaintiffs is rationally related to furthering a legitimate state interest as opposed to being arbitrary, capricious, illegal and in bad faith.

139.    Defendants arbitrarily, irrationally, and in bad faith declined and refused to apply their own ordinance definitions for "projecting signs" and to properly classify Plaintiffs' proposed sign under the ordinance definitions by intentionally mischaracterizing Plaintiffs' proposed sign as an "off-premises sign" and "digital sign" which, by definition of the zoning ordinance, it is not.

140.    Section 595-194(E) of the Zoning Ordinance, which was cited to deny Plaintiffs their requested sign, is facially unconstitutional under the Fourteenth Amendment as arbitrary, capricious, and without rational basis, as its use of the undefined term "approved" in the exception for RGB matrix signs allows Defendants to arbitrarily, capriciously, and irrationally apply or deny the exception with no objective criteria or definition and without any accountability.

141.    The term "approval" in §595-194(E) is unconstitutionally vague.

142.    Section 595-194(E) was applied in this instance to deny Plaintiffs' request for a projecting sign within a certain distance of a traffic signal, despite the fact that *the section expressly exempts from its application "approved" RGB matrix signs and Plaintiffs' uncontroverted evidence was that its proposed sign is, in fact, comprised of an approved RGB matrix certified under all applicable federal and state safety and testing regulations.*

143.    To the extent Defendants arbitrarily, irrationally and in bad faith interpreted "approval" in this instance to require its "approval", without any objective criteria or analysis, leaving it wholly within the arbitrary, capricious, undefined, and irrational discretion of Defendants to apply or exempt RBG matrix signs as it sees fit, said interpretation reveals §595-

28

194(E) to be both facially unconstitutional and unconstitutionally applied to Plaintiffs in violation of Plaintiffs' substantive due process rights.

144.    Said conduct by Defendants as set forth in paragraphs 136 through 139 was in bad faith and specifically intended to restrict the Plaintiffs' First Amendment right to free speech and expression.

145.    Defendants' arbitrariness, irrationality, and bad faith with respect to Plaintiffs' proposal to erect a projecting sign exceeding (as others are allowed) the ordinance's sign size limitation for Centre Square is further demonstrated by the fact that at and following hearings on Plaintiffs' request to erect a projecting sign:

> a.    Defendants arbitrarily, irrationally, and in bad faith failed to accept as an expert Plaintiffs' traffic safety expert who is extraordinarily qualified;
>
> b.    Defendants arbitrarily, irrationally, and in bad faith rejected the uncontroverted testimony of Plaintiffs' traffic safety expert, human factors expert, and planning expert;
>
> c.    Defendants arbitrarily, irrationally, and in bad faith accepted as an expert its own proffered expert traffic safety witness, who was not qualified to render a relevant opinion, had never rendered an opinion on the subject matter at hand, and who self-admittedly had no scientific or professional basis upon which to render an opinion;
>
> d.    Defendants arbitrarily, irrationally, and in bad faith rejected undisputed and uncontroverted testimony and evidence offered by Plaintiffs in support of their request to erect their sign;
>
> e.    Defendants arbitrarily, irrationally, and in bad faith made findings of fact

29

that were not supported by competent evidence, nor by the weight of the evidence, and which were disputed and thoroughly disproven by Plaintiffs;

f.      Defendants completely failed to cite to the record when denying Plaintiffs' request to erect the projecting sign, and indeed Defendant cannot cite to the record to support its erroneous, arbitrary and irrational conclusions and findings;

g.      Defendants arbitrarily, irrationally, and in bad faith applied its own unilateral and baseless definitions to Plaintiffs' request to erect a projecting sign, including arbitrarily and irrationally classifying Plaintiffs' proposed sign as an "off-premises sign" and "digital sign", and not the "projecting sign" that it is under the ordinance definitions, thereby legislating (without authority) in defiance and rejection of the express definitions in Defendants' Zoning Ordinance;

h.      Defendants arbitrarily, irrationally, and in bad faith ignored or rejected evidence that Plaintiffs' proposed sign falls within express exceptions stated in Zoning Ordinance provisions Defendants used to deny Plaintiffs' sign;

i.      Defendants arbitrarily, irrationally, and in bad faith interpreted its ordinance in clear defiance of the express language therein, rejecting its own ordinance in favor of arbitrary, irrational, illegal and bad faith action against Plaintiffs;

j.      Defendants mischaracterized Plaintiffs' testimony and evidence in defiance of the actual record;

k.      Defendants ignored and wholly failed to address claims and grounds for

relief raised by Plaintiffs, including constitutional grounds, that would allow and indeed compel Defendants to grant Plaintiffs' request;

l.       Defendants, without a rational basis for the difference in its treatment of Plaintiffs compared to similarly-situated properties and owners on Centre Square, and without rational relationship for differential treatment to any legitimate government interest, arbitrarily, irrationally, illegally, and in bad faith treated Plaintiffs differently.

146.   Defendants' conduct violates and continues to violate Adams/LVL and the Benners'/One 6 LLC's First Amendment rights of free expression and speech, as well as rights to Equal Protection under the Fourteenth Amendment, and has therefore unlawfully and intentionally undertaken to harm Plaintiffs and their business interests, including not only Plaintiffs' financial interests but also their use and enjoyment of the subject property and their free speech rights.

147.   The aforementioned unlawful conduct of Defendants in violating Plaintiffs' free speech and equal protection rights under the First and Fourteenth Amendments to the United States Constitution, by virtue of its illegality and bad faith, is arbitrary and irrational to the degree that it shocks the conscience.

148.   As a result of Defendants' arbitrary, capricious, irrational, bad faith and constitutionally illegal conduct in denying Plaintiffs' proposed projecting sign, Defendants, under color of state law, infringed upon the Benners' and One 6 LLC's protected property and liberty interests and deprived them of substantive due process guaranteed by the Fourteenth Amendments to the United States Constitution.

WHEREFORE, the Benners and One 6 LLC respectfully request that this Honorable

Court enter Judgment in their favor and against Defendants for the denial of substantive due process in an amount to be determined, together with interest, costs, and fees (including attorney fees), any and all further or additional damages (including but not limited to exemplary, consequential, and/or punitive) that may be available as provided under applicable law, equitable and declaratory relief requiring Defendants to permit Plaintiffs to erect their sign as proposed and without further impediment, and such further relief as this Honorable Court deems equitable and just.

## COUNT III

### 42 U.S.C. §1983

### DENIAL OF FREE SPEECH IN VIOLATION OF
### THE FIRST AMENDMENT TO THE U.S. CONSTITUTION
### (All Plaintiffs vs. All Defendants)

149.    Paragraphs 1 through 148 are incorporated herein as if fully set forth in this paragraph.

150.    Section 595-198(H) of Defendant City of Easton's Zoning Ordinance requires that the sign erected on a property "shall relate to the use and advertise aspects of the property only" with the exception of those in the Expressway Transitional Zoning District.

151.    Section 595-195(I) of Defendant City of Easton's Zoning Ordinance applies various restrictions that are only applicable to "Off-premises signs", defined in the Zoning Ordinance §595-10(D) as "a freestanding, elevated sign advertising an establishment, merchandise, service or entertainment which is not sold, produced, manufactured, or furnished at the site on which the sign is located (i.e., billboards or outdoor advertising)."

152.   Within Section 595-195(I)("Off-premises signs") is subpart 595-195(I)(1)(t), which regulates and restricts "digital signs" through numerous specific requirements only to the extent that they are "Off-premises signs". Digital signs related to the use or advertising aspects of the property, i.e., on-premises signs, are not regulated or restricted under Defendant City of Easton's Zoning Ordinance.

153.   Sections 595-198(H), 595-195(I) in conjunction with its definition in 595-10(D), including all subparts and particularly 595-195(I)(1)(t), are content-based sign restrictions in that they draw distinctions based on the off-premises versus on-premises nature of the messages, which in application requires enforcement authorities to examine the content of the message that is conveyed to determine whether these sections apply to a particular sign and to justify enforcement thereof. In other words, to determine whether these sections of the Zoning Ordinance do or do not apply, Defendant City of Easton Zoning Hearing Board must read the message written on the sign and determine its meaning, function, or purpose, and there is no way to make a decision as to the applicability of Sections 595-198(H) and 595-195(I) (including all subparts) without understanding the content of the message, i.e., whether it advertises uses or aspects of the property or off premise business interests.

154.   Sections 595-198 and 595-195(I) (including all subparts) on their face, create content-based sign restrictions that treat signs differently from others depending on their content or the messages intended to be conveyed.

155.   Sections 595-198(H) and 595-195(I) of the sign regulations of Defendant City of Easton's Zoning Ordinance (pertaining to off-premises signs) are facially invalid under the First Amendment of the United States Constitution as unconstitutional restrictions on free speech.

156.    Sections §595-198(H) and 595-195(I) (pertaining to off-premises signs) are content-based restrictions on speech that are subject to, and do not satisfy, strict scrutiny.

157.    Defendants cannot demonstrate that Section §595-198(H) and 595-195(I) are narrowly-tailored to further a compelling government interest.

158.    Defendants cannot demonstrate any compelling government interest that would distinguish Plaintiffs' speech via its proposed sign in Centre Square from the other signs on Centre Square it has approved, permitted, and allowed to be erected and maintained while impeding Plaintiffs' speech.

159.    Defendants cannot demonstrate that its restriction of Plaintiffs' speech, but not others on Center Square, is narrowly tailored.

160.    Though the aforementioned sections of the City of Easton sign ordinance are subject to strict scrutiny as content-based, said sections are also facially invalid under intermediate scrutiny in that Defendants cannot demonstrate that these sections further an important or substantial government interest unrelated to the suppression of free expression and restrict free speech no greater than is essential to the furtherance of that substantial interest.

161.    Though the aforementioned sections of the City of Easton sign ordinance are subject to strict scrutiny as content-based, said sections are also facially invalid under a context-sensitive analysis in that Defendants cannot demonstrate that these sections are narrowly tailored to further a significant government interest.

162.    Sections 595-198(H) and 595-195(I) (pertaining to off-premises signs) of the City of Easton sign ordinance are part of a pattern in Defendants' Zoning Ordinance of Defendants unconstitutionally defining and regulating signs according to the content of the message and/or what the message is intended to convey, and treating such signs differently by

34

imposing different restrictions upon such signs, without a compelling or even important/substantial government interest, such that *Defendants' Sign Regulations are on a whole unconstitutional.*

163.    Section 595-193(F) of Defendants' Zoning Ordinance, on its face, creates content-based sign categories that define, regulate, or exempt messages based on their content and/or what the message is intended to convey, and treats such signs differently from others depending on that content, including "signs advertising meeting times and places of non-profit service or charitable organizations" and "public service and information signs advertising . . . public conveniences." Among the different treatment such signs receive is the allowable size for their content and messages.

164.    Section 595-193(H) of Defendants' Zoning Ordinance, on its face, creates content-based sign categories that define, regulate, or exempt messages based on their content and/or what the message is intended to convey, and treats such signs differently from others depending on that content, including display in windows of "the name or names of credit or charge institutions." Such signs receive different treatment with respect to the allowable size of their content than do content for "charitable organizations" and "public service messages".

165.    Section 595-193(E) of Defendants' Zoning Ordinance, on its face, creates numerous content-based sign categories that define, regulate, or exempt messages based on their content and/or what the message is intended to convey, and treats such signs differently from others depending on that content; specifically, it exempts "holiday displays", which can be any size the messenger desires.

166.    Section 595-194(B) of Defendants' Zoning Ordinance, on its face, creates content-based sign categories that define, regulate, or exempt messages based on their content

35

and/or what the message is intended to convey, and treats such signs differently from others depending on that content, including "unlawful" and "prohibited" signs. Such signs include "Signs with prohibited words" (patently content-based), such as any sign that contains the words 'stop', 'look', 'danger', or (the vague and undefined) "any other word, place, symbol or character which attempts or appears to attempt to direct the movement of traffic..."

167.   Section 595-196(A)(2) through (A)(9) of Defendants' Zoning Ordinance, on its face, creates content-based sign categories that define, regulate, or exempt messages based on their content and/or what the message is intended to convey, and treats such signs differently from others depending on that content, including a temporary sign "advertising the sale or rental of the premises", a temporary sign "communicating land development by a builder, contractor, developer, or other person interested in its sale or development", a temporary sign of "mechanics or artisans" "during the period such person are performing work on the premises", a temporary sign directing patrons and members to service clubs, churches or other non-profits, temporary "yard sale" signs, signs "advertising political parties, candidates for elected office or current ballot questions," temporary signs "directing persons to temporary exhibits, shows, or events," and signs for "promotions, special events, and seasonal sales."

168.   Section 595-197(A)(2) of Defendants' Zoning Ordinance, on its face, creates content-based sign categories that define, regulate, or exempt messages based on their content and/or what the message is intended to convey, and treats such signs differently from others depending on that content, including regulating the location of signs with reference to the content of the message, i.e., "temporary signs advertising political parties, referenda and/or candidates for election."

169.   Section 595-204 ("Sign variance") contains "ground rules" for what a good

message looks like, and how messages should be conveyed, including setting "rules" for word choice "to create positive images for individual businesses, enhance visual harmony of the shopping district, and create an environment that attracts customers", and *instructs Defendant City of Easton Zoning Hearing Board to consider these content-based "ground rules" as additions to the variance requirements of the Zoning Ordinance.*

170.    Among these "ground rules" for variances based on content and messaging in §595-204 are that the messenger/speaker:

> "*Limit the information on signs*. The shortest message on a sign has the most impact on pedestrians . . . *Use as few words as is necessary* to project an image for the business that will interest shoppers."

> "*When more than one language is used on a sign, it is especially important to keep information brief.*" In other words, if you speak a foreign language or what to convey a message in a foreign language, you are told to "use less words".

> "Symbols or cutouts of familiar objects... can communicate a great deal of information without lettering at all."

> "Sales can be communicated to the public with temporary paper signs displayed on the storefront signs, Like permanent signs these *must be brief and small*. Do not leave temporary signs in place for too long, or they lose their effect and reduce the value of good window displays."

171.    Sections 595-198(H) and 595-195(I) (pertaining to off-premises signs) thus fit squarely into Defendants' policy, practice and pattern through its Zoning Ordinance of defining and regulating signs according to the content of the message and/or what the message is intended to convey, and treating such signs differently by imposing different restrictions upon such signs, without a compelling or even important/substantial government interest in violation of the United States Constitution.

172.    The unconstitutional content-based sections of Defendant City of Easton's sign regulations in the Zoning Ordinance cannot be severed from the rest of the sign regulation in

the Zoning Ordinance, such that the entirety of the Sign Regulations are unconstitutional.

173.    By decision dated August 23, 2019 and mailed to Plaintiffs on August 27, 2019, Defendants applied Sections §595-198(H) and 595-195(I) to Plaintiffs and denied Plaintiffs' application, appeal and request for variances to erect its proposed projecting sign on their property in Centre Square based on the content of their speech.

174.    While Defendants have approved, granted variances for, and allowed larger signs and sign coverage for messages and content they prefer to "ensure visibility" to passersby, Defendants denied Plaintiffs a variance for their requested size variance based on the content of Plaintiffs' messages which Defendants deem undesirable and do not wish to have greater visibility.

175.    Defendants' application of §595-198(H) and 595-195(I) to Plaintiffs' application, appeal, and requests constitutes an as-applied, unconstitutional denial of and infringement upon Plaintiffs' free speech rights guaranteed by the First Amendment to the United States Constitution.

176.    Plaintiffs have suffered harm and injury as a result of Defendants' violation of their free speech rights under the First Amendment to the United States Constitution in the form of denial of their application, appeal and variance requests to erect their proposed sign, which has and continues to cause financial harm and lost opportunity, and to deny and impede their free exercise of their speech rights.

WHEREFORE, Plaintiffs requests that this Honorable Court enter judgment in their favor and against Defendants for the denial of free speech in an amount to be determined, together with interest, costs, and fees (including attorney fees), any and all further or additional damages (including but not limited to exemplary, consequential, and/or punitive) that may be

available as provided under applicable law, equitable and declaratory relief requiring Defendants to permit Plaintiffs to erect their sign as proposed and without further impediment, and such further relief as this Honorable Court deems equitable and just.

**PFEIFFER & BRUNO, P.C.**

BY: _____
JAMES L. PFEIFFER, ESQ. I.D. #47268
Attorney for Plaintiff, LVL Co. LLC
44 N. 2nd Street – P.O. Box 468
Easton, PA 18044-0468
610-258-4003 (o)
610-258-1943 (f)

Dated: September 23, 2019